CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 8 2007

JOHN F. CORCORAN, CLERK
BY: 
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| EDWARD A. JASPER, | ) | |
| Plaintiff, | ) | Civil Action No. 7:07cv00497 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LAUREN MULLINS, et al., | ) | By: Hon. Glen E. Conrad |
| Defendants. | ) | United States District Judge |

Plaintiff Edward A. Jasper, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff, who is incarcerated at Red Onion State Prison ("ROSP") in Pound, Virginia, alleges that his constitutional rights were violated when he was given the wrong medication by a nurse at ROSP. He seeks $400,000.00 in damages. Upon review of the record, the court concludes that the plaintiff has not stated a claim upon which relief may be granted. Therefore, the court will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1).[1]

## I. Factual Summary

Plaintiff alleges that, on October 16, 2005, Nurse Mullins gave him another inmate's medicine. He states that he had swallowed the medicine, but "spit up some of his meds upon realizing Nurse Mullins [had] supplied him with another inmates [sic] meds." Plaintiff states that he was then "refused medical treatment" and "was told to put in a request for sick call." He states that the incident caused him to suffer chest pains, palpitations, dizziness, and shortness of breath for several weeks.

Plaintiff filed a number of complaints and requests regarding the incident, eventually filing

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

a grievance, wherein the facts alleged in his assorted complaints are documented. On November 22, 2005, the Assistant Warden issued his Level I response to plaintiff's grievance, stating, in pertinent part:

> **Grievance Summary:** You stated on October 16, 2005, Nurse L. Mullins purposely gave you the wrong medication. When Nurse Mullins and Sgt. Kendrick left your cell to proceed with pill pass, you spit up some of the medication that you had taken realizing that it was the wrong medication. You spit up what wasn't swallowed. The nurse saw you choking and gagging and realized what had happened. She told you to give the medication back, and you told her not until the mistake was documented.[2] This has caused you to have palpitations for the last several weeks, dizziness, light headedness, and shortness of breath.
>
> **Informal Summary:** Your informal complaint, responded to by R. Deel, RNCA, on October 19, 2005, stated . . . Your medication will be given as ordered by the doctor. The meds were flushed, therefore solving the problem. Also a review of the administering of meds was conducted.
>
> **Investigation:** V. Phipps, Director of Nursing, stated the wrong medication was given to you by mistake, however you flushed the medication when the mistake was caught. The nurse informed you that she had accidentally poured the wrong pill pack. The mistake was caught and corrected before you ingested the medication. You were then given the correct medication.
>
> * * *
>
> This grievance is **FOUNDED**, as there has been incorrectly applied procedure of this policy. In the future correct procedure will be followed. There is no inmate remedy available in this case as you did not ingest the medication. V. Phipps, Director of Nursing, has reviewed the administering of medication with her staff to ensure that this does not happen again.

Dissatisfied with this outcome in his favor, plaintiff appealed to the Health Services Director for the Virginia Department of Corrections. On December 12, 2005, the Health Services Director issued his Level II response to plaintiff's appeal, stating, in relevant part:

---

[2] The court has verified that, in several documents he has included with his complaint, including an "Inmate Request for Information" dated December 22, 2005, plaintiff admitted that he had refused to relinquish the medications that he had spit out "until it was documented what she gave me."

2

Your grievance appeal has been reviewed along with the response from Level I, and your original complaint that on 10/16/05 Nurse Mullins purposely gave you the wrong medication. You state that when Nurse Mullins and Sgt. Kendrick left your cell to proceed with pill pass, you spit up some of the medication that you had taken, realizing that it was the wrong medication. You state you spit up what wasn't swallowed. You state that the nurse saw you choking and gagging and realized what had happened. You state she told you to give her the medication back, and you told her not until the mistake was documented. You state this caused you to have palpitations for several weeks, dizziness, light headedness and shortness of breath.

Based on the information provided and upon further investigation, I disagree with the Level I respondent and determine your grievance **unfounded**. According to Ms. V. Phipps, RNCB, the nurse poured the medication in your cup and caught that it was not your medication. She informed you that she had poured the wrong pill pack, and had you flush the incorrect medications. She then poured you your new medications in a new container. There was no violation of procedure regarding this issue. The mistake was caught prior to you taking the medications. You did not ingest the incorrect medications; therefore, you could not have suffered any side-effects. If you continue to experience the above symptoms, you are encouraged to submit a sick call request to discuss your concerns with the physician. No further action is necessary from this level.

Plaintiff was informed that the Level II response constituted the last level of appeal for his grievance. Subsequently, plaintiff timely filed the instant complaint. The court will discuss additional facts and allegations as necessary in its analysis.

## II. Analysis

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm,

3

usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee v. Murphy, 797 F.2d 179, 181-83 (4th Cir. 1986) (reversing summary judgment for defendants and remanding where guards knew of serious illness of plaintiff and exhibited deliberate indifference to request for medical treatment prior to inmate's death); see also Estelle, 429 U.S. at 104; Farmer, 511 U.S. at 832-35; Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). To bring a constitutional claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990).[3] Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Claims regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. An inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Plaintiff's claim must fail. In the first instance, although he may be dissatisfied that he was dispensed the wrong medicine, plaintiff's own submissions suggest that he did not ingest the medicine. Accordingly, he cannot demonstrate a serious injury threatening permanent disability to

---

[3] Furthermore, a defendant who occupies a supervisory position may not be held liable under a theory of respondeat superior in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-92 (1978); Ross v. Reed, 719 F.2d 689, 698 (4th Cir. 1983) (finding that respondeat superior liability has no place in § 1983 jurisprudence).

4

which defendants were allegedly deliberately indifferent. Moreover, to the extent plaintiff insists that he was harmed by ingesting some portion of the medication that was accidentally dispensed to him, the claim fails because he has failed to allege facts sufficient to demonstrate deliberate indifference to a serious medical need.

Plaintiff complains that he was not given medical care immediately following the accidental dispensation of the medication; instead, he was directed to report to sick call should he have any symptoms. However, plaintiff does not allege that the symptoms (shortness of breath, lightheadedness, and palpitations) he allegedly suffered as a result of the accidental ingestion of some unspecified portion of the unspecified medication were so severe that he was prompted to follow through with the suggested visit to sick call. To the extent plaintiff contends that the incident warranted immediate emergency medical care, rather than a visit to sick call, his claim amounts to a mere medical disagreement. Wright, 766 F.2d at 849. Moreover, given that plaintiff's own submissions indicate that, although he was given the opportunity, he did not seek medical treatment, his allegations fail to suggest that he sustained a serious or significant injury because of allegedly consuming some portion of another inmate's medicine. See Alexander v. Tippah County, Miss., 351 F.3d 626, 631 (5th Cir. 2003) (stating that any injury incurred from vomiting and nausea which was not so severe as to require medical intervention or have lasting health effects, was de minimis). In sum, plaintiff's claims are not actionable under the Eighth Amendment.[4]

---

[4] Furthermore, to the extent plaintiff believes that prison medical staff failed to recognize or treat his medical needs, such a disagreement does not rise to the level of a federal constitutional violation. Rather, such a claim would arise, if at all, under state medical malpractice laws and does not present a colorable claim under § 1983. See Estelle, 429 U.S. at 105-06. Having determined to dismiss the plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over any claim plaintiff may purport to bring under state law. See 28 U.S.C. § 1367(c). Additionally, plaintiff offers no allegations upon which this court can find a basis for his claim against the Warden and the Assistant Warden. Plaintiff has not shown that the Warden or the Assistant Warden personally or intentionally delayed, denied, or otherwise interfered with his access to medical care.
(continued...)

5

## III. Conclusion

Based on the foregoing, the court finds that plaintiff has not presented any claims that constitute a violation of his constitutional rights. Therefore, the court will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1).[5]

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 8ᵗʰ day of November, 2007.

_____
United States District Judge

---

[4](...continued)
Estelle, 429 U.S. 104-05; Miltier, 896 F.2d at 854.

[5] Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).